**SO ORDERED.**

**SIGNED this 29 day of December, 2015.**

*David M. Warren*
**David M. Warren**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN THE MATTER OF:** ) | |
| **FRESH AFFAIRS, LLC** ) | **CASE NO.: 15-06816-5-DMW** |
| ) | **Chapter 11** |
| Debtor. ) | |

### FIRST INTERIM ORDER AUTHORIZING DEBTOR'S
### USE OF CASH COLLATERAL

THIS CAUSE was scheduled for hearing before the Court on Wednesday, December 23, 2015, upon the Debtor's Motion for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363 (the "Motion") filed by the Debtor on Thursday, December 17, 2015. It appears to the Court that the terms and conditions set forth below are reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors, and should be approved. It further appears to the Court that the notice of the Motion that the Debtor provided to creditors and parties in interest is adequate and proper.

THEREFORE, based upon the Motion for Authorization to Use Cash Collateral, the arguments of counsel, and the record in this case, the Court hereby makes the following FINDINGS OF FACT and CONCLUSIONS OF LAW:

In support of this Motion the Debtor shows unto the Court the following:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The Debtor filed its petition pursuant to Chapter 11 of the United States Bankruptcy Code on December 17, 2015 and current operates as a debtor-in-possession.

3. The Debtor is a North Carolina limited liability company that provides floral and event design services with its place of business located at 4724-116 Hargrove Road, in Raleigh, Wake County, North Carolina. The Debtor has been operating for approximately ten (10) years.

4. The Debtor and Working Capital are parties to a "Merchant Agreement", dated July 23, 2015 which purports to effectuate a sale to Working Capital of future receivables, not yet generated by the Debtor (the "Working Capital Loan Documents").

5. As security for the indebtedness under the Working Capital Loan Documents, the Debtor granted to Working Capital a first priority security interest in all of Debtor's present and future accounts, chattel paper, deposit accounts, contract rights, goods, inventory, equipment and fixtures, general intangibles, instruments, and proceeds now or hereafter acquired by the Debtor (the "Collateral").

6. It appears that the Debtor's inventory and accounts generated by its floral and event planning business may constitute cash collateral of Working Capital within the meaning of § 363 of the Bankruptcy Code.

7. The Debtor and Pearl Funding are parties to a "Merchant Agreement", dated September 29, 2015 which purports to effectuate a sale to Pearl funding of future receivables, not yet generated by the Debtor (the "Pearl Funding Loan Documents").

8. As security for the indebtedness under the Pearl Funding Loan Documents, the Debtor may have granted to Pearl Funding a second priority security interest in the same "Collateral". However, it appears based upon the pleadings and taking judicial notice of the related documents provided by Debtor's counsel at hearing, specifically a non-certified copy of a UCC Financing Statement with the North Carolina of Secretary of State dated November 12, 2015 and a Confession of Judgment that was entered in the Supreme Court of the State of New York, County of New York on November 16, 2015, which has not been domesticated in the State of North Carolina, that all actions to perfect its security interest in the Collateral are within the preference period under the Bankruptcy Code. Debtor's counsel has indicated intent to file pleadings to avoid the perfecting acts of Pearl Funding.

9. The Debtor is currently anticipating continuation of operations by way of this proposed reorganization. The Debtor believes that in order to maintain existing operations, and

retain maximum value of its business, the Debtor will be required to incur certain operating expenses. The Debtor's only source of income is through the continued operations and the cash proceeds generated thereby.

10. The Debtor will maintain one or more Debtor-in-Possession ("DIP") bank accounts, into which it will deposit all cash, checks and other cash items. The Debtor anticipates use of one of these accounts solely designated for deposits received from clients for future events.

11. The Debtor represents that a reorganization and continuation of its operations will generate the greatest source of funds for creditors, including secured creditors.

12. For the purposes of this Order, the Debtor acknowledges and does not dispute the validity, priority, and enforceability of the lien asserted by Working Capital or the amount due under the loan documents and agreements; provided, however, that neither the Debtor nor any other party in interest shall be precluded from reviewing and challenging the validity, priority, and enforceability of the security interests and liens held by Working Capital in addition to the amounts due to Working Capital.

13. The Debtor proposes that Working Capital should be allowed, as adequate protection for the Debtor's use of the cash collateral, post-petition replacement liens on all of the collateral securing the indebtedness with the same validity, priority, and enforceability as Working Capital had against the collateral as of the petition date. The Debtor asserts that the terms, conditions, and limitations of this Order are reasonably tailored to protect the interests of all creditors of the bankruptcy estate.

14. Though the Debtor disputes the validity and enforceability of Pearl Funding's security interest in the Collateral, for the purpose of this Order and until a final adjudication is held on whether Pearl Funding's actions to perfect its lien are avoidable, the Debtor acknowledges that if such perfecting acts are not avoidable, Pearl Funding holds a second lien against the Collateral in the amounts owed under the loan documents. However, neither the Debtor nor any other party in interest shall be precluded from reviewing and challenging the validity, priority, and enforceability of the security interests and liens held by Pearl Funding.

15. The Debtor proposes that Pearl Funding should be allowed, as adequate protection for the Debtor's use of cash collateral, post-petition replacement liens on all of the collateral securing the indebtednesss with the same validity, priority, and enforceability as Pearl Funding

had against the collateral as of the petition date. The Debtor asserts that the terms, conditions, and limitations of this Order are reasonably tailored to protect the interests of all creditors of the bankruptcy estate.

16.     The requirements of the Bankruptcy Rules and the Bankruptcy Code, including, without limitation Bankruptcy Rule 4001(d), have been satisfied for the Debtor's use of cash collateral and for the grant of adequate protection to Working Capital upon the terms set forth in this Order.

17.     No creditors' committee has yet been appointed in this case pursuant to § 1102 of the Bankruptcy Code.

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, the Court hereby ORDERS:

1.      Working Capital's liens on the collateral securing the indebtedness shall extend to the Debtor's post-petition assets, and to the extent deemed valid and enforceable, shall have a first priority lien against the Collateral with the exception of the "Carve Out" identified below; provided, however, that nothing in this Order shall be deemed to grant Working Capital a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise non-avoidable pre-petition lien(s). The post-petition liens and security interest provided for herein shall survive the term of this Order to the extent the pre-petition liens were valid, perfected, enforceable, and non-avoidable as of the petition date. The Debtor does not hereby waive, and expressly reserves for itself and the bankruptcy estate (including other creditors and any Committee in this proceeding), the right to challenge the validity and priority of the pre-petition liens of Working Capital and, derivatively, the post-petition liens provided for hereunder. Until such time as any such lien is determined to be invalid by future Order of this Court, the Debtor acknowledges and agrees to the validity of the loan documentation.

2.      Pearl Funding's liens on the collateral securing the indebtedness shall extend to the Debtor's post-petition assets, and to the extent deemed valid and enforceable, shall have a second priority lien against the Collateral with the exception of the "Carve Out" identified below; provided, however, that nothing in this Order shall be deemed to grant Pearl Funding a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise non-avoidable pre-petition lien(s). The post-petition liens and security interest

provided for herein shall survive the term of this Order to the extent the pre-petition liens were valid, perfected, enforceable, and non-avoidable as of the petition date. The Debtor does not hereby waive, and expressly reserves for itself and the bankruptcy estate (including other creditors and any Committee in this proceeding), the right to challenge the validity and priority of the pre-petition liens of Pearl Funding and, derivatively, the post-petition liens provided for hereunder. Until such time as any such lien is determined to be invalid by future Order of this Court, the Debtor acknowledges and agrees to the validity of the loan documentation.

3. The replacement liens granted to Working Capital and Pearl Funding pursuant to this Order shall be subject to and subordinate to a carve-out for the payment of allowed professional fees and disbursements incurred by Court approved professionals ("Carve Out"). So long as the Debtor has the right to use Cash Collateral pursuant to this Order, professionals for the Debtor, if any, may be paid from Cash Collateral pursuant to the Budget and procedures approved by the Court. To the extent such professional fees are approved by the Court and paid pursuant to this Order, they shall be free and clear of the liens of Working Capital and Pearl Funding.

4. The Debtor shall be authorized to use cash collateral for its post-petition necessary, and reasonable operating expenses in accordance with the budget attached as **"Exhibit A"** and subject to the terms of this Order.

5. The Debtor shall deposit all cash, checks, and other cash items received from the operation of the business encumbered by liens in favor of Working Capital and Pearl Funding into its Debtor-in-Possession ("DIP") operating bank account. Those funds received for future events not expected to be used for the purpose of that event in the calendar month deposited, shall be held in a separate DIP account designated for such deposits.

6. The Debtor may request that Working Capital and Pearl Funding approve an amended budget for the term of this Order (or a specific expenditure not included within the budget). If an amended budget is approved by Working Capital and Pearl Funding in writing, it shall become effective and shall be deemed incorporated into this Order (in the place of the existing budget) as of the date on which the Debtor and/or Working Capital and Pearl Funding file a copy of the amended budget with the Court. To the extent Working Capital and/or Pearl Funding declines any request by the Debtor to amend the budget, the Debtor reserves the right to file an additional motion for authority to use cash collateral and to seek an expedited hearing

thereon; provided, however, that such hearing shall not occur less than three business days' notice to Working Capital, Pearl Funding, and/or any "Committee" appointed in this proceeding.

7. Debtor shall serve a copy of the monthly report required by Rule 4002 on Working Capital and Pearl Funding by emailing a copy of same within two (2) business days of filing such report with the Bankruptcy Court. This obligation shall continue and remain in effect until the earlier of (A) the effective date of any confirmed Chapter 11 plan in this proceeding, or (B) conversion of this case to another Chapter of the Bankruptcy Code or dismissal of this proceeding.

8. This Order shall remain in full force and effect until the earlier of: (a) January 31, 2016; or (b) entry of an Order by the Court terminating this Order for cause, including but not limited to breach of its terms and conditions.

9. All authority to use cash collateral as set forth herein shall expire as to any collateral that is the subject of an Order granting relief from the automatic stay under Section 362 of the Bankruptcy Code. Also, such authority shall expire on mutual written agreement of the parties.

10. It shall be a default hereunder for any one or more of the following to occur:
    a. Failure of the Debtor to maintain insurance on its tangible, personal property currently covered by insurance policies of the Debtor;
    b. Failure of the Debtor to file a Chapter 11 Plan in accordance with Orders of this Court.

11. Nothing herein shall be deemed to alter the effect of Working Capital's liens and such liens shall remain in full force and effect pursuant to the terms of Working Capital's loan documents and 11 U.S.C. § 552(b).

12. Nothing herein shall be deemed to alter the effect of Pearl Funding's liens and such liens shall remain in full force and effect pursuant to the terms of Pearl Funding's loan documents and 11 U.S.C. § 552(b).

13. The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of Working Capital and/or Pearl Funding. The Debtor expressly reserves its right to seek additional use of cash collateral beyond the stated term of this Order. Any party may seek further consideration of the relief granted in this Order or other cash

collateral issues by filing a request with the Court; provided, however, that a hearing on any such request shall not occur on less than three business days' notice to Working Capital and Pearl Funding as applicable, the Bankruptcy Administrator, the Debtor, and the Committee, if any. Nothing in this Order shall waive any rights of the creditors unless expressly provided herein.

14. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by any subsequent order of this Court or any other court, such stay, modification, or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation, or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding. This Order shall be binding upon and inure to the benefit of the Debtor. The terms and provisions of this Order shall bind any trustee appointed for the Debtor's estate under any provision of the Bankruptcy Code. This binding effect is an integral part of this Order.

15. The Debtor shall serve notice of this Order on all parties entitled to receive the same pursuant to Bankruptcy Rules 1007 and 4001.

16. Further hearing on this matter shall be heard on January 26, 2016 at 10:00 a.m. in the Raleigh Bankruptcy Court, 3rd Floor Courtroom, located at 300 Fayetteville Street Mall, Raleigh, North Carolina.

END OF DOCUMENT

Exhibit A

Budget December 17, 2015 - December 31, 2015

|  | Deposit |  |
|---|---|---|
| Opening Balance Deposits: | $3,000.00 |  |
|  | $3,557.35 |  |
|  |  |  |
| Expected Income/ Receivables: | $15,239.00 |  |
| Receivables for Future Work*: |  | $4,665.19 |
|  |  |  |
| Total Income | $21,796.35 |  |
|  |  |  |
|  | Debits |  |
| FIXED/SEMI-FIXED EXPENSES: |  |  |
| Trademark Properties (rent) | $0.00 |  |
| AT&T | -$834.57 |  |
| Erie Insurance (quarterly fee) | -$1,041.64 |  |
| First Benefits (quarterly fee) | -$1,234.00 |  |
| PSNC Energy | -$89.10 |  |
| Web Hosting Services | -$60.00 |  |
| Total Fixed/semi-fixed: | -$3,259.31 |  |
| Running Total | $18,537.04 |  |
|  |  |  |
| VARIABLE EXPENSES |  |  |
| Payroll Related Expenses |  |  |
| Payroll ending 12/20/2015 | -$9,049.17 |  |
| Taxes (est at 15%) | -$1,357.38 |  |
| Total Payroll: | -$10,406.55 |  |
| Running total: | $8,130.49 |  |
|  |  |  |
| Variable Expenses |  |  |
| Fresh Flowers | -$2,220.20 |  |
| Truck Rentals | -$500.00 |  |
| Rentals (linens, chairs, etc.) | -$2,000.00 |  |
| Fuel | -$250.00 |  |
| Total Variable Expenses: | -$4,970.20 |  |
| Running Total: | $3,160.29 |  |
|  |  |  |
| Total Plus funds to hold on deposit: | $7,825.48 |  |

**Budget January 1, 2016 - January 31, 2016**

|  | Deposit |  |  |
|---|---|---|---|
| Opening Balance Deposits: | $3,160.29 |  |  |
| Funds held on deposit future work |  | $4,665.19 |  |
| Booked January Receivables | $23,191.11 |  |  |
| Anticipated Income (based on prior years) | $10,000.00 |  |  |
| Receivables for Future Work*: | Unknown |  |  |
|  |  |  |  |
| Total Income | $36,351.40 |  |  |
|  |  |  |  |
|  | Debits |  |  |
| **FIXED/SEMI-FIXED EXPENSES:** |  |  |  |
| Trademark Properties (rent) | -$1,810.42 |  |  |
| AT&T | -$695.98 |  |  |
| Erie Insurance (quarterly fee) | $0.00 |  |  |
| First Benefits (quarterly fee) | $0.00 |  |  |
| PSNC Energy | -$100.00 |  |  |
| Web Hosting Services | -$60.00 |  |  |
| Storage Unit | -$106.00 |  |  |
| Total Fixed/semi-fixed: | -$2,772.40 |  |  |
| Running Total | $33,579.00 |  |  |
|  |  |  |  |
| **VARIABLE EXPENSES** |  |  |  |
| **Payroll Related Expenses** |  |  |  |
| Payroll ending 1/1/2016 | -$3,748.00 |  |  |
| Payroll 1/15/2016 & 1/29/2016 | -$9,237.00 |  |  |
| Taxes (est at 15%) | -$1,947.75 |  |  |
| Total Payroll: | -$14,932.75 |  |  |
| Running total: | $18,646.25 |  |  |
|  |  |  |  |
| **Variable Expenses** |  |  |  |
| Fresh Flowers | -$5,737.14 |  |  |
| Truck Rentals | -$750.00 |  |  |
| Rentals (linens, chairs, etc.) | -$5,000.00 |  |  |
| Credit Card Fees | -$600.00 |  |  |
| Fuel | -$600.00 |  |  |
| Total Variable Expenses: | -$12,687.14 |  |  |
| Running Total: | $5,959.11 |  |  |
|  |  |  |  |
| **Other Expenses:** |  |  |  |
| Quarterly Fee to US Bankruptcy Ct EDNC | -$650.00 |  |  |
| Income Lyn Graves (as available and if approved by Court) | -$3,500.00 |  |  |
| Running Total | $2,459.11 |  |  |
| **Total plus funds held in deposit** | 7124.3 |  |  |